**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Anthony ARMSTRONG, Appellant.**

Superior Court of Pennsylvania.

Argued June 25, 2013.

Filed July 31, 2013.

James A.S. Temple, Public Defender, Philadelphia, for appellant.

Jonathan M. Levy, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: GANTMAN, J., ALLEN, J., and PLATT, J.*

OPINION BY PLATT, J.

Appellant, Anthony Armstrong, appeals from the judgment of sentence entered following his conviction of two counts of attempted burglary as felonies in the first

*Retired Senior Judge assigned to the Superior Court.

degree, and one count of possessing instruments of crime. After careful review, we affirm in part and vacate in part and remand for resentencing consistent with this opinion.

The following facts are taken from the trial court's opinion of August 15, 2012:

On January 3, 2009, complainant Holly Curtis was alone inside her home on Harvey Street when, at approximately 12:30[ a.m.], [she] heard a knock at her door. She didn't answer the door. A few minutes later, she heard loud noises in the back of her home, and immediately called police and directed them to the rear of her home. Officers arrived within seconds, and observed [Appellant] attempting to pry open the only window in complainant's home that was not secured by bars. [Appellant] dropped his tool and fled by jumping over a nearby fence. However, he was apprehended by police a short distance from complainant's home.

On March 2, 2009, at approximately 10:30[ p.m.], complainant Floretta Tiggett was alone inside her apartment on Upsal Street when she heard a loud bang at her window. Complainant Tiggett went to the window to investigate, and looked directly at [Appellant] as he attempted to pry open her window with a crowbar. Complainant immediately called 911, and while waiting for the police to arrive, she yelled at [Appellant] to leave, but he continued trying to pry open her window until her alarm system was activated. Complainant repeatedly called 911 and gave a description of [Appellant's] appearance and clothing. When her alarm alerted her neighbors, Ms. Tiggett left her apartment to go outside. Seeing [Appellant], she asked him "Why are you trying to break into

my apartment?" Within a few minutes, officers arrived on the scene. Ms. Tiggett described [Appellant's] appearance and the crowbar he carried to the officers. Officers observed [Appellant], based on the description given by complainant, as he attempted to flee around the back of the building and he was immediately apprehended. Within minutes, complainant was taken to the location where officers detained [Appellant], and she positively identified him as the person who attempted to break into her home.

(Trial Court Opinion, 8/16/12, at 2–3 (record citations omitted)).

The trial court granted the Commonwealth's motion to consolidate Appellant's cases on November 10, 2009. Trial was delayed several times by Appellant and due to case transfers arising from the reorganization of the Philadelphia criminal trial courts.

On December 1, 2011, a jury convicted Appellant of the above-mentioned charges, and on January 27, 2012, the trial court found that Appellant was a fourth-strike offender and sentenced him to consecutive mandatory terms of not less than twenty-five to fifty years' incarceration for each attempted burglary conviction, plus not less than two and a half nor more than five years for possessing an instrument of crime, for an aggregate sentence of not less than fifty-two and one half nor more than one hundred five years. Appellant timely appealed.[1]

Appellant raises six questions for our review:

1. Did not the court below err and abuse its discretion in ordering a joint trial in the two instant matters, where evidence of one offense would not have been admissible in a trial on the other, where the two offenses alleged were not part of a common plan, scheme or design, where no other basis for joinder existed, and where a joint trial was highly prejudicial to the defense?

2. Did not the court below err in denying appellant's motion to dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure, where the Commonwealth failed to bring appellant to trial within 365 days of the filing of the criminal complaint and where this failure was the result of a lack of due diligence on the part of the Commonwealth?

3. Did not the court below err in denying appellant's motion to suppress identification evidence in the matter docketed at CP–51–CR–0006396–2009, inasmuch as appellant was subject to an unduly suggestive identification procedure, which included improper statements by police prior to the identification, as to render the out-of-court identification so unreliable as to require suppression, while also so tainting the in-court identification as to also require suppression?

4. Did not the lower court err as a matter of law in determining that appellant was subject to a mandatory "third strike" sentence of twenty-five to fifty years under 42 Pa.C.S. § 9714, where the evidence presented by the Commonwealth showed that appellant had previously been convicted of two prior crimes of violence, but had not been sentenced on one of those crimes prior to the commission of the other, as required by *Commonwealth v. Shiffler* [583 Pa. 478], 879 A.2d 185 (Pa.2005)?

---

1. Pursuant to the trial court's order, Appellant timely filed a Rule 1925(b) statement on May 23, 2012, and the trial court entered its Rule 1925(a) opinion on August 16, 2012. *See* Pa.R.A.P. 1925.

5. Did not the lower court err in imposing two consecutive sentences of twenty-five to fifty years each, effectively sentencing appellant as a "fourth-strike" offender, even though he had never been previously sentenced as a third-strike offender, and therefore violating the requirements of 42 Pa.C.S. § 9714 and *Commonwealth v. McClintic* [589 Pa. 465], 909 A.2d 1241 (Pa.2006)?

6. Was not appellant's aggregate sentence of 52 1/2 to 105 years of incarceration manifestly excessive and unreasonable?

(Appellant's Brief, at 4–5).

■ In his first issue, Appellant alleges that the trial court "abused its discretion in joining the instant cases for trial." (*Id.* at 16). Specifically, he claims that "[j]oinder was improper, and grossly prejudicial" where the underlying attempted robberies "shared no significant characteristics not shared by many or most other burglaries." (*Id.*). We disagree.

Our standard of review is well-settled:

Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant. The Rules of Criminal Procedure provide:

Joinder—Trial of Separate Indictments of Informations

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1)(a)-(b).

*Commonwealth v. Wholaver,* 605 Pa. 325, 989 A.2d 883, 898 (2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 332, 178 L.Ed.2d 216 (2010) (case citation omitted).

It is a principle of long standing in this Commonwealth that evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind. The general rule, however, allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. Thus, although the law does not allow use of evidence which tends solely to prove that the accused has a "criminal disposition," evidence of other crimes is admissible for certain purposes if the probative worth of this evidence outweighs the tendency to prejudice the jury.

Similar safeguards are necessary where a defendant is tried for two or more offenses in one trial, for the prejudice to the defendant may be just as insidious and the temptation on the part of the prosecutors to cumulate the crimes may be just as great. The rule ... is that offenses may be joined or indictments may be consolidated where

the separate offenses show the defendant's unusual or distinctive modus operandi.

\* \* \*

The Commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.

*Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715, 720–21 (1981) (citations omitted).

Here, the attempted burglaries were not only "of the same class" of crime, *id.* at 721, but took place in close temporal and geographic proximity, committed against women who were alone in their homes late at night, by attempting to pry open a window using a crowbar or metal tool. (*See* Trial Ct. Op., 8/16/12, at 4–5); *cf. Morris, supra* at 721 (affirming joinder of two robberies committed against women in elevators in adjacent buildings, five days apart and at approximately the same time of night). Furthermore, the evidence of each offense would be admissible in a separate trial for the other under Pa.R.E. 404(b) to prove intent, absence of mistake or accident, and common scheme or plan, but their distinct locations and victims rendered them "capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a); *see also Wholaver, supra* at 898. Appellant's claim of prejudice because of the "danger that the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of [Appellant]" is merely a generalized restatement of the law, and speculative at best. (Appellant's Brief, at 28 (internal quotation marks omitted)).

Accordingly, we can discern no abuse of discretion by the trial court in granting joinder where the Commonwealth demonstrated a "high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others[.]" *Morris, supra* at 721; *see also Wholaver, supra* at 898. Appellant's first issue is without merit.

■ In his second issue, Appellant argues that "the trial court erred in denying [his] motion to dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal procedure, because Appellant was not brought to trial within the time limits contemplated by the rule and because the Commonwealth did not exercise due diligence in bringing Appellant to trial." (Appellant's Brief, at 29). We disagree.

■ We review Appellant's Rule 600 argument according to the following principles:

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind

Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos,* 936 A.2d 1097, 1099 (Pa.Super.2007) (*en banc*), *appeal denied,* 597 Pa. 705, 948 A.2d 803 (2008) (citation omitted).

▮▮▮ Rule 600 provides, in pertinent part:

(A) Commencement of Trial; Time for Trial

\*     \*     \*

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*     \*     \*

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

\*     \*     \*

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

(b) The determination of the judge or issuing authority is subject to review as provided in paragraph (D)(3).

(D) Remedies

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

(2) Except in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

(3) Any requests for review of the determination in paragraph (C)(3) shall be raised in a motion or answer filed pursuant to paragraph (D)(1) or paragraph (D)(2).

Pa.R.Crim.P. 600(A), (C)-(D).

To summarize, the courts of this Commonwealth employ three steps ... in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600( [D] ). As we have explained, Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Ramos, supra* at 1103 (footnote and citations omitted). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.* at 1102 (citation and emphasis omitted).

Because Appellant's trial included the joinder of two separate criminal charges, we note that there are two adjusted run dates to consider. First, Appellant was arrested and charged on January 3, 2009 for the attempted robbery of Holly Curtis, resulting in a mechanical run date of January 4, 2010.[2] *See* Pa.R.Crim.P. 600(A); *Ramos, supra* at 1103. However, a 162–day delay is attributable to Appellant for failure to appear at the preliminary hearing which led to the subsequent issue of an arrest warrant, outstanding until June 1, 2009. (N.T. Motion, 11/28/11, at 19); *see also Commonwealth v. Baird,* 601 Pa. 625, 975 A.2d 1113, 1118 (2009) ("[W]here a period of delay is caused by the defendant's willful failure to appear at a court proceeding of which he has notice, exclusion is warranted.") (citation omitted). Therefore, Appellant's adjusted run date for the attempted robbery of Holly Curtis was June 15, 2010. *See* Pa.R.Crim.P. 600(C); *Ramos, supra* at 1103. Second, a complaint was filed against Appellant for the attempted robbery of Floretta Tiggett on March 3, 2009, for a mechanical run date of March 3, 2010. *See* Pa.R.Crim.P. 600(A); *Ramos, supra* at 1103.

---

**2.** January 3, 2010 fell on a Sunday.

The two complaints were consolidated on November 10, 2009, and initially listed for trial on January 13, 2010, well within the run dates for both charges. (N.T. Motion, 11/28/11, at 10). However, Appellant requested a continuance and the court relisted Appellant's case for the next available trial date on September 15, 2010, resulting in 245 days of excludable delay attributable to Appellant. (N.T. Motion, 11/28/11, at 10, 13, 20); *see Commonwealth v. Aaron,* 804 A.2d 39, 43 (Pa.Super.2002) (*en banc*) ("Any delay caused by the need to reschedule a trial because of a continuance attributable to the defense constitutes excludable time, even if the defendant was prepared to go to trial at an earlier date.") (citation omitted). He then requested a continuance to consider a plea offer, which he rejected on September 24, 2010, resulting in nine additional days of delay attributable to Appellant. (*See* N.T. Motion, 11/28/11, at 10, 13, 21); *Aaron, supra* at 43.

The case was relisted on September 30, 2010, which resulted in seven days of delay attributable to the trial court. (*See* N.T. Motion, 11/28/11, at 11, 13, 21); *Commonwealth v. Preston,* 904 A.2d 1, 14 (Pa.Super.2006) (*en banc*), *appeal denied,* 591 Pa. 663, 916 A.2d 632 (2007) ("It is long-established that judicial delay may serve as a basis for extending the period of time within which the Commonwealth may commence trial[.]") (citation omitted). Thereafter, due to a reorganization of the Philadelphia criminal court system by geographical zone, Appellant's case was then reassigned to Judge Byrd, who listed Appellant's case at the earliest possible date of March 15, 2011, thus causing 167 days of excusable delay. (*See* N.T. Motion, 11/28/11, at 11, 13, 21–22); *Commonwealth v. Jones,* 886 A.2d 689, 701–02 (Pa.Super.2005), *appeal denied,* 587 Pa. 686, 897 A.2d 452 (2006) (holding that period between defendant's arraignment and scheduled trial was excusable because the trial court determined the date assigned for trial was the earliest possible trial date). On March 15, 2011, the trial court was occupied in another trial, and continued the case to the next earliest possible trial date, May 31, 2011, an additional seventy-seven days attributable to the court. (*See* N.T. Motion, 11/28/11, at 11, 13, 23); *Jones, supra* at 701–02. Appellant made an advance request for a continuance, resulting in the case being listed for trial at the earliest possible date of November 28, 2011, a 181–day delay attributable to Appellant. (*See* N.T. Motion, 11/28/11, at 11–12, 13, 17, 23); *Aaron, supra* at 43. Jury selection commenced on November 28, 2011. *See also Commonwealth v. El,* 933 A.2d 657, 663 (Pa.Super.2007), *affirmed,* 602 Pa. 126, 977 A.2d 1158 (2009) ("In the context of jury trials, 'meaningful trial proceedings have begun' once the jury selection process has commenced.") (citation omitted).

After careful review, we conclude that Appellant is responsible for 435 days of excludable delay and the trial court is responsible for 251 days of excusable delay, for a total of 686 days of delay not attributable to the Commonwealth. Therefore, the 636–day delay between the adjusted run date of March 3, 2010 for the attempted robbery of Floretta Tiggett and the date on which trial commenced, November 28, 2011, and the 532–day delay from the adjusted run date of June 15, 2010 for the attempted robbery of Holly Curtis is excusable pursuant to Rule 600, and not a failure of due diligence on the part of the Commonwealth. *See* Pa.R.Crim.P. 600(C)(1); *Ramos, supra* at 1103. Accordingly, the trial court did not abuse its discretion in denying Appellant's Rule 600 motion. This issue does not merit relief.

In his third issue, Appellant claims that "the trial court erred in denying [his] mo-

tion to suppress identification evidence . . . inasmuch as [Floretta Tiggett] had only a brief opportunity to observe [him], and identified Appellant in a one-on-one 'show-up' whose inherent suggestiveness was heightened by improper statements by the police prior to the identification." (Appellant's Brief, at 37). We disagree.

■■■ "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. De-Jesus*, 580 Pa. 303, 860 A.2d 102, 112 (2004) (citation omitted).

In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive

as to give rise to an irreparable likelihood of misidentification.

*Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa.Super.2003), *appeal denied*, 578 Pa. 694, 851 A.2d 142 (2004) (citations omitted); *see id.* at 977–78 (affirming conviction based on victim's one-on-one, crime-scene identification of appellant viewed alone in police van, wearing handcuffs, where police said " 'they had someone' for her to identify and had 'found him running down the street all sweaty and just tired looking' ").

■■■ Here, at the suppression hearing, Ms. Tiggett testified that she heard banging in her kitchen and pulled up the window shade to see Appellant through the window, less than a foot away. (*See* N.T. Motion, 11/28/11, at 28). She was able to see his face twice: when she first pulled up the shade, and again from the same vantage point, after she called the police. (*Id.* at 29–30, 34). When the police arrived, she described Appellant with "a white hoody on and a coat and a crow bar in his hand," (*id.* at 35), and less than ten minutes later, the police drove her to see someone they had picked up running through the apartment complex. (*Id.* at 31). Appellant, in handcuffs, was shown to Ms. Tiggett, and she identified him as the person trying to break into her apartment based on his face and because he was wearing the same clothes. (*Id.* at 32, 38).

The suppression court denied Appellant's motion to suppress the identification, (*id.* at 55), determining that Ms. Tiggett "was able to view [Appellant] during his attempt to enter her home, . . . positively identified upon his arrest . . . [and] there was no impermissible conduct by police during the identification procedure." (Trial Ct. Op., 8/16/12, at 10–11). Appellant argues that the circumstances of the identification were unduly suggestive of Appellant's guilt because: Ms. Tiggett had little

opportunity to see him, Appellant was described to her as having been picked up "running", he was shown to Ms. Tiggett in handcuffs, and the officers told Ms. Tiggett that "they wanted me to go around and identify him as the same guy that was trying to break into my apartment." (Appellant's Brief, at 40 (citing N.T. Motion, 11/28/11, at 36, 38)).

██ However, we conclude that the record supports the suppression court's determination that Ms. Tiggett's identification was reliable where she had plenty of opportunity to see Appellant's unobstructed face close up through the window as he attempted to break in. (*See* N.T. Motion, 11/28/11, at 28–38). Furthermore, it is well-settled that on-scene, one-on-one identifications, even where an appellant is handcuffed and officers ask a victim to identify him as the perpetrator, are "not so suggestive as to give rise to an irreparable likelihood of misidentification." *Moye, supra* at 976; *see id.* at 977 (citing cases). Accordingly, the trial court did not err in denying Appellant's suppression motion. *See DeJesus, supra* at 112. This issue is without merit.

██ In his fourth and fifth issues, Appellant argues that "the trial court erred in imposing 'third strike' sentences pursuant to 42 Pa.C.S. § 9714, where Appellant had never been convicted or sentenced for a 'second strike' offense." (Appellant's Brief, at 41; *see id.* at 51). Appellant claims *Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241, 1249 (2006), and *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185 (2005), hold that, where he was never sentenced as a second-strike offender, a third-strike sentence cannot be imposed. We are constrained to agree.

> The issue of the proper interpretation of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9714, the statute at issue in this case, has been held to

implicate the legality of the sentence imposed....

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Leverette*, 911 A.2d 998, 1001–02 (Pa.Super.2006) (citations omitted).

Section 9714 of the Sentencing Code provides, in relevant part:

> **§ 9714. Sentences for second and subsequent offenses.**
>
> **(a) Mandatory sentence.**
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).
>
> (2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total

confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S.A. § 9714(a)(1)-(2).

In *Shiffler, supra,* our Supreme Court considered the language of Section 9714(a)(2) to determine whether an appellant who had previously been convicted of three separate burglary charges and sentenced simultaneously could be sentenced as a third-strike offender when he had never been sentenced as a second-strike offender. *See Shiffler, supra* at 186–87.

Discussing the appellant's assertion that the underlying legislative purpose of Pennsylvania's three-strikes law is to punish multiple offenders consistently with the recidivist philosophy, and that a third-strike sentence imposed without a second-strike sentence was illegal, our Supreme Court stated:

> The anomaly of appellant's situation is thus: while he has not ever been—nor could he have been—sentenced as a second-strike offender, a reflexive application of subsection 9714(a)(2) would subject him to sentencing as a third-strike offender. The unreasonableness of that result is made more apparent when considering the disparity between the sentence appellant received upon his first sentencing contact with the criminal justice system—an aggregate term of 11 1/2 to 23 months of imprisonment in a county facility—and that which the Superior Court panel majority deemed statutorily required upon this, his second sentencing contact with the system—a minimum term of 25 years of imprisonment. We do not believe that such a result was intended by the General Assembly in adopting the graduated scheme of recidivist sentencing which is reflected in Section 9714.

*Id.* at 194. Further:

> As to the recidivist philosophy, this and other Pennsylvania appellate courts have repeatedly recognized that, "the point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." Particularly salient here is the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter. Any other conception would ignore the rationale underlying the recidivist philosophy, *i.e.*, that the most culpable defendant is "one, who after being reproved, 'still hardeneth his neck'." Just as the second-time offender enhancement under subsection (a)(1) is meant to punish a defendant more severely when that defendant has offended before and has been afforded an opportunity to reform, so too is the third-time offender enhancement under subsection (a)(2), which increases the minimum punishment to twenty-five years, obviously *meant to punish a defendant more severely when he has already foregone two opportunities to reform himself.* The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law.

*Id.* at 195 (citations and emphases omitted). Thus, the Court, embracing a "se-

quential approach" to section 9714, determined that the appellant was only subject to a second-strike sentence, where he had multiple convictions which would each count as strikes, but had not been previously sentenced as a second-strike offender. *Id.* at 194, 196.

Our Supreme Court further discussed the recidivist philosophy in *McClintic, supra,* when determining "whether it was proper for the trial court to impose two separate sentence enhancements of twenty-five to fifty years in prison for two crimes, *i.e.,* robbery and burglary, which occurred during the same criminal episode." *McClintic, supra* at 1249. There, the Court stated:

> [T]he result in [*Commonwealth v.*] *Dickerson* [533 Pa. 294, 621 A.2d 990 (Pa. 1993),] supported our conclusion in *Shiffler* that Section 9714 espouses a graduated scheme of recidivist sentencing. The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law. Following the recidivist logic, **each strike that serves as a predicate offense must be followed by sentencing and, by necessary implication, an opportunity for reform, before the offender commits the next strike.**

Here, the burglary, which was the fourth strike for which the second sentence enhancement was imposed, occurred prior to the conviction, sentence, and opportunity to reform incident to the third-strike offense of robbery, and

therefore does not comport with *Dickerson* or *Shiffler.*

*Id.* at 1252 (citations and quotation marks omitted) (emphasis added).

Similarly, in *Leverette, supra,* this Court determined that we are bound by our Supreme Court's reasoning where an appellant had previous convictions for robbery, kidnapping and terroristic threats, but had been sentenced simultaneously:

> Although Appellant's behavior may warrant the imposition of the three-strikes law, we are bound by our Supreme Court's opinion in *Shiffler* that the underlying legislative purpose of Pennsylvania's three-strikes law is to punish multiple offenders consistently with the recidivist philosophy. The facts of this case are similar to those in *Shiffler,* in that Appellant was not sentenced as a second-time offender pursuant to 42 Pa.C.S.A. § 9714(a)(1) before the trial court imposed a penalty pursuant to the third-time offender provision of 42 Pa.C.S.A. § 9714(a)(2). Further, Appellant was not given an opportunity to reform pursuant to the recidivist philosophy between his first and second convictions for robbery, kidnapping, and terroristic threats. Therefore, Appellant is considered a second-time offender pursuant to 42 Pa.C.S.A. § 9714(a)(1).

*Leverette, supra* at 1003–04 (case citation omitted).

Here, Appellant has two convictions which would qualify as prior strikes.[3] (*See* N.T. [Sentencing], 1/27/12, at 18). He was arrested on June 19, 1987 for aggravated assault, for which he was convicted and sentenced on April 13, 1988. He was ar-

---

**3.** The Commonwealth attempts to assert that Appellant's extensive non-strike criminal history is relevant to the calculation of sentence under Section 9714. (*See* Commonwealth's Brief, at 30 n. 9). However, our Supreme Court stated in *Shiffler* that "crimes of vio-

lence" triggering the three-strike sentencing scheme unambiguously implicate "**only** those crimes that are statutorily enumerated in subsection (g)[.]" *Shiffler, supra* at 190 (citing 42 Pa.C.S.A. § 9714(g)) (emphasis added).

rested on October 18, 1987 and convicted and sentenced April 12, 1989 for robbery and attempted rape. (*See id.* at 23; *see also* Appellant's Brief, at 45). He argues that the robbery and rape conviction is not a second strike because he had not been sentenced for the aggravated assault before he was arrested. (*See* Appellant's Brief, at 46).

Instantly, Appellant's case differs from those in *Shiffler, McClintic,* and *Leverette, supra,* in that he was not sentenced simultaneously to the predicate offenses at issue. However, it is undisputed that Appellant had not been convicted or sentenced as a first-strike offender for the aggravated assault when he was arrested for the robbery and rape charges. (*See* N.T. [Sentencing], 1/27/12, at 19; Appellant's Brief, at 46; Commonwealth's Brief, at 24). Therefore, Appellant did not have the "opportunity to reform pursuant to the recidivist philosophy between his first and second convictions" and must now be considered a second-strike offender consistent with the recidivist sentencing philosophy which is well-established in our case law. *Cf. Commonwealth v. Haag,* 603 Pa. 46, 981 A.2d 902, 907 (2009) (applying recidivist philosophy under DUI law to determine that "[i]f no conviction on that previous violation had occurred by the time the offender committed the subsequent violation ... the offender cannot be sentenced as a recidivist on the subsequent violation").

Accordingly, the trial court erred in sentencing Appellant as a third-strike offender pursuant to 42 Pa.C.S.A. § 9714(a)(2).[4] Consequently, we are constrained to vacate his illegal sentence. *See Leverette, supra* at 1101–02.[5]

Judgment affirmed in part and remanded in part for resentencing consistent with 42 Pa.C.S.A. § 9714(a)(1). Jurisdiction relinquished.

---

4. To the extent that Appellant claims a constitutional violation under the line of cases following *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), we need not address this argument where he concedes that "[t]he statutory scheme enacted in Section 9714 complies with the *Apprendi* rule[.]" (Appellant's Brief, at 49 (citing *Apprendi, supra* at 490, 120 S.Ct. 2348 for holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt")). *See also Alleyne v. United States,* —— U.S. ——,

133 S.Ct. 2151, 2160 n. 1, 186 L.Ed.2d 314 (2013) ("In *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today.").

5. Because we remand for resentencing consistent with this opinion, we will not address Appellant's sixth issue, challenging the discretionary aspects of his sentence.