J-A07016-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DAREL BARBOUR | |
| Appellee | No. 260 WDA 2015 |

Appeal from the Order January 20, 2015
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001701-2003
CP-63-CR-0002018-2003

BEFORE:  BOWES, MUNDY AND JENKINS, JJ.

CONCURRING MEMORANDUM BY BOWES, J.:　　　**FILED JULY 22, 2016**

I cannot join the reasoning employed by my distinguished colleagues as I believe their holding misapplies our precedents.  The majority holds that a defendant who fails to show for trial set **outside** the time parameters of Rule 600 waives his rule-based right to discharge.  However, I would find that Appellee forfeited his right to raise a Rule 600 claim by failing to demand discharge in a timely fashion, and therefore I concur in the result.

I disagree with the majority's application of **Commonwealth v. Steltz**, 560 A.2d 1390 (Pa. 1989), and **Commonwealth v. Brock,** 61 A.3d 1015 (Pa. 2013).  In both **Steltz** and **Brock**, the defendants failed to appear

for a trial date that **complied** with Rule 600.[1] The opinion brushes this important distinction aside:

> We recognize that in **Steltz** and **Brock** the defendants absconded before the Commonwealth's Rule 600 time had expired. **See generally Brock**, **supra** at 1015; **Steltz, supra** at 1390. However, as noted above, our Supreme Court's rule is clear, "[o]ne's voluntary absence from a day set for trial within Rule [600] is a *waiver of that rule*." **Brock**, **supra** at 1010.

Majority opinion at 10 (alterations and emphasis in original). Herein, Appellee did not absent himself from "a day set for trial within Rule 600." Rather, the trial court found the Commonwealth set the trial date outside Rule 600:

> There is absolutely no evidence of record, other than the self-interested testimony from ADA Carroll, who later admitted he did not remember what occurred during that time period, that the Commonwealth scheduled the Defendant for trial at either case number prior to the October 18, 2004 trial term, which was undoubtedly after the adjusted run dates of both August 18, 2004 and September 1, 2004.

Trial Court Opinion, 4/2/15, at 20. Thus, according to these factual findings, Appellee's absence was **not** "for a day set for trial within Rule [600]." In essence, the trial court determined that dismissal of charges was a *fait accompli*: had Appellee appeared in court on October 18, 2004, as scheduled, a motion for dismissal would have succeeded. Waiver of the rule-based right to a speedy trial is justified when a defendant fails to

---

[1] **Steltz** discusses Rule 1100, the predecessor to the current Rule 600. For ease of discussion, I will simply refer to both Rules as Rule 600.

appear for a date within Rule 600 for a simple reason: he could have had a timely trial by appearing. By failing to appear, "they go to the end of the line and must wait their turn after the convenience of the others their absence delayed." **Steltz**, **supra** at 1391. Here, the trial court has determined Appellee was denied the right to a timely trial, even if he had appeared in October of 2004. All that remained for him to do was request dismissal.

The majority is correct that we are not licensed "to narrow the plain import of [our Supreme] Court's unambiguous legal holdings." Majority Opinion at 10 (citing **Brock**, **supra** at 1022 (Castille, C.J., concurring)). However, the majority's rule represents a major expansion of the Court's rulings, and a hypothetical demonstrates why. Imagine the Commonwealth schedules a case well beyond the mechanical run date. The defendant fails to appear and a bench warrant is issued. The next day, the litigant appears and the case is scheduled for the next available court date. According to the majority, this defendant has **forever** lost the ability to raise a Rule 600 claim, and the Commonwealth would not need to establish due diligence.

Former Chief Justice Castille has noted that "the Superior Court should proceed cautiously in areas that implicate rulemaking." **Commonwealth v. Pitts**, 981 A.2d 875, 881 (Pa. 2009) (Castille, C.J., concurring). With that admonishment in mind, I cannot join my colleagues.

I nevertheless concur in the result for the following reasons. The trial court focused on the lack of evidence corroborating the ADA's testimony that Appellee would have been scheduled for trial before October 18, 2004. Upon careful review of the record and the testimony, I believe the Commonwealth was unfairly hampered in its ability to convince the trial court that Appellee was, in fact, scheduled for trial well before that date.

Since the majority accepts the Commonwealth's waiver argument, the underlying factual findings have not been discussed. Those findings are crucial to my disposition and I begin there. This appeal concerns two separate criminal cases. On August 4, 2003, charges were filed at CP-63-CR-0002018-2003 (hereinafter "2003-2018"). On August 20, 2003, charges were filed at CP-63-CR-0001701-2003 (hereinafter "2003-1701"). Appellee remained incarcerated from August 27, 2003 to March 5, 2004, when he was granted nominal bond. The significant dispute in this case concerns what happened between March 5, 2004 and the trial date of October 18, 2004.

The Commonwealth presented the testimony of Assistant District Attorney ("ADA") Josh Carroll, who handled Appellee's cases. He testified that, after Appellee was released from jail, ADA Carroll would have immediately scheduled the cases for the next available trial term, which occurred in April of 2004. N.T., 12/29/14, at 20. While Mr. Carroll referenced a note in his file to this effect, he had no specific recollection of scheduling Appellee for trial. *Id*. at 23. His testimony was not corroborated

by a written order or docket entry that could confirm that any type of proceeding had been scheduled for April. *Id*. at 20-21. Mr. Carroll explained that the general practice in Washington County in 2004 was to place cases on a generic list. *Id*. at 12. If a plea deal could not be reached, "you just tried to sort out what cases had priority or what cases you were able to take to trial." *Id*. Mr. Carroll was asked who maintained this list of cases. He replied:

> I don't know if I would use the word maintain. I understand what you mean. It was more or less you let the judge know, here is [sic] the ten cases I want to call to trial this month. The judge's staff would write it down, and you would, obviously, know what cases you called.

*Id*. at 14. The prosecutor stated multiple times that the process was mostly informal and that formal orders were rarely issued, even when a defendant requested a continuance. *Id*. at 14-15. ADA Carroll stated that since the cases did not proceed in April, he would have listed the cases on the informal list for September of 2004. *Id*. at 23. The trial court interjected to ask why a warrant was not issued in April. Mr. Carroll stated, "I don't know that he didn't show up in April." *Id*. Order, 3/8/04.[2]

---

[2] The order incorrectly listed the date of incarceration as August 20th instead of August 27th. The judge presumably relied on the date charges were filed.

The next relevant date is September 14, 2004. On that date, a bench warrant was issued due to Appellee's failure to appear, but vacated on September 17, 2004. The order reads:

> AND NOW, this 17 day of September, 2004, upon consideration of the confusion regarding notice to counsel for the above-referenced defendant, the bench warrant filed the 14[th] day of September, 2004, is hereby vacated.
>
> The defendant and counsel are expected to be prepared for a call of the list for the October 2004 trial term.

Order, 9/17/04. However, Appellee did not appear for the October proceedings nor file a Rule 600 motion. On October 18, 2004, bench warrants were issued at both cases.

No further action occurred at these cases until September 8, 2014, when Appellee was arrested on the outstanding warrants. On September 9, 2014, the warrants at both cases were vacated and Appellee's cases were scheduled for a court date on September 29, 2014. Order, 9/11/14. This court date was rescheduled for October 20, 2014, following a motion for discovery. On October 3, 2014, a motion to dismiss was filed, and a hearing was held on the motion. Following the submission of post-hearing briefs, the trial court granted the motion, finding October 18, 2004 was the first date Appellee was scheduled for trial.

For its part, the Commonwealth continues to maintain the trial court's factual findings are incorrect, but offers no basis to disturb them beyond an invitation to accept speculation and pattern of practice for fact:

On March 5, 2004, [Appellee] was released on nominal bond and the Commonwealth scheduled it for trial for the April 2004 trial term. The cases did not go to trial during the April 2004 trial term.

There was no trial term during August of 2004. The trial term for September of 2004 began September 13, 2004. The defendant's cases at 2018 of 2003 and 1701 of 2003 were scheduled for trial that date but he failed to show and on September 14, 2004, a bench warrant was filed at both cases for [Appellee]'s arrest. On September 17, 2004, the bench warrant was lifted because counsel indicated he may not have provided the defendant notice.

Commonwealth's brief at 9. The Commonwealth argues that "Mr. Carroll testified the Commonwealth was prepared to go to trial in April 2004 as evidence[d] by the notes on his trial file. **There is no evidence to the contrary** that it was not called in April 2004." Commonwealth's brief at 21 (emphasis added). However, where, as here, the trial date exceeds the adjusted run date, the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012).

Given the Commonwealth's concession it cannot prove Appellee was ever scheduled for trial, it is clear the trial court's factual findings cannot be disturbed. Our standard and scope of review in evaluating Rule 600 issues is well-settled. We determine

whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or

- 7 -

misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013) (citing

*Commonwealth v. Ramos*, 936 A.2d 1097, 1099 (Pa.Super. 2007) (*en banc*) (alterations in original due to rule renumbering)).  Dismissal is required under Rule 600 "when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay."  *Commonwealth v. Goldman*, 70 A.3d 874, 879-80 (Pa.Super. 2013).  To determine whether dismissal is required under Rule 600, the starting point is the "mechanical run date," which is calculated by adding 365 days to the date criminal charges were filed.  Pa.R.Crim.P. 600(A)(2)(a).

Herein, Appellant was charged on August 4, 2003 and August 20, 2003; the mechanical run dates were, respectively, August 3, 2004, and August 19, 2004.  The trial court found the October 18, 2004 date exceeded the run date when factoring in all excludable time and excusable delay.  Since we must view the facts in the light most favorable to the prevailing party, I cannot find the trial court abused its discretion.

Yet, I would not hold that our inability to disturb the factual findings ends our inquiry in this case. "[T]his Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." **Armstrong**, **supra** at 234-35. In striking this balance, I think it is important to note the purpose of Rule 600 and its progeny. In **Barker v. Wingo**, 407 U.S. 514, 527 (1972), the Supreme Court of the United States set forth the factors to be balanced in determining whether a defendant's constitutional right to a speedy trial had been violated. Our Supreme Court accepted **Barker**'s invitation to the States to "prescribe a reasonable period consistent with constitutional standards[.]" Thus, Rule 600 "was designed to encourage both the prosecution and the judiciary to act promptly in criminal cases and to establish an objective time limit for their guidance." **Commonwealth v. Genovese**, 425 A.2d 367, 369-70 (Pa. 1981). It is a prophylactic rule; we do not litigate whether the constitutional right to a speedy trial was violated if the 365-day clock has expired.

At the same time, "'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right[.]'" **United States v. Olano**, 507 U.S. 725, 731 (1993) (quoting **Yakus v. United States**, 321 U.S. 414, 444 (1944)). If

the underlying constitutional right may be forfeited, *a fortiori* the procedural mechanism designed to vindicate the right can be forfeited. **C.f. Bradford, supra** ("The right to a speedy trial . . . is not intended to afford a defendant a windfall by permitting him to sit on the right and then call foul when it is too late for the prosecution to do anything. If a defendant is going to complain about the prosecution's diligence, he must exercise diligence himself and not simply sit idly by[.]" 46 A.3d at 706 (Eakin, J., concurring)).

In the case *sub judice*, Appellee testified that he believed "the case got thrown away" because he did not receive any paperwork. N.T., 12/29/14, at 58. He also conceded he did not contact his attorney to ascertain what happened, stating "it was [the attorney's] job and the [c]ourt's job" to keep him updated. **Id**. at 58-59. I do not believe our precedents require us to reward a defendant's deliberate indifference to outstanding criminal charges. In **Commonwealth v. Baird**, 975 A.2d 1113, 1119 (Pa. 2009), our Supreme Court adopted a rule that notice to defense counsel constitutes reasonable notice for purposes of determining a defendant's unavailability under Rule 600.[3] The Court noted in *dicta* that the defendant therein "adopted a strategy of willful ignorance." Appellee did the same in this instance. His lack of interest in a speedy trial should be a factor in our

---

[3]    **Baird** does not apply herein because it is unknown if counsel had notice of the alleged April proceeding.

analysis. **Barker** noted that a speedy trial protects a defendant's interests by, *inter alia*, "minimiz[ing] anxiety and concern of the accused." **Barker**, **supra** at 532. Herein, the defendant admitted he had no such concerns or anxieties. ("Q. So, you had no concern as to the status of the case? A. No.") N.T., 12/29/14, at 59. When weighing the interests of Appellee's speedy trial rights versus the protection of society, it is difficult to place any great weight on the former when Appellee disavows any anxiety or care.

I recognize such arguments tread closely to the rejected notion that a defendant bears some duty to ensure he is timely prosecuted. **See Commonwealth v. Brown**, 875 A.2d 1128, 1141 (Pa.Super. 2005). ("Appellee had no obligation to bring himself to trial[.]"). But there is a significant difference between a demand for **trial** and a demand for **discharge**. The defendant has no duty in the former situation because he "has no duty to bring himself to trial; the State has that duty[.]" **Barker v. Wingo**, 407 U.S. 514, 527 (1972). To hold otherwise would essentially alert the prosecution to a looming problem. However, that principle should not extend to the demand for discharge. In the latter situation, the error is no longer **potential**, and he should bear some duty to assert the allegation of error in a timely manner. The legal system recognizes this principle as the driving force behind statutes of limitations, which exist to "promote justice by preventing surprises through . . . revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and

- 11 -

witnesses have disappeared." *CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2183 (2014) (citation omitted).

Furthermore, there are strong indications the Commonwealth was prejudiced by the delay. Appellee's revival of a claim that, by the trial court's factual findings, germinated over a decade ago, surely contributed to the trial court's conviction that "due to the serious nature of [Appellee]'s charges, the Commonwealth would have requested an issuance of a bench warrant had he failed to appear for a properly scheduled hearing." Trial Court Opinion, 4/2/15, at 19. This statement ignores a simple explanation for the lack of a bench warrant: Appellee appeared at the prior proceedings, but the matters were either rescheduled or postponed. If, for example, the trial court could not have accommodated a trial, the delay would be excusable time. *See Commonwealth v. Preston*, 904 A.2d 1, 14 (Pa.Super. 2006) (*en banc*). Or, perhaps Appellee's trial counsel wished to postpone the case for further plea negotiations, resulting in excludable time. Indeed, the evidence strongly suggests something happened before the October trial date. The September 17th order indicating some type of proceeding raises the question of why, and how, the matter was scheduled in the first place. Surely, the trial court did not schedule the case on its own initiative. This strongly suggests the Commonwealth did, in fact, attempt to prosecute the case and followed the informal procedure described the ADA. In this regard, I note the trial court did not necessarily find the

Commonwealth failed to prosecute Appellee; rather, the judge found the Commonwealth did not meet its burden of proof. "After [Appellee]'s nominal bail hearing on March 5, 2004, the Commonwealth could have placed [Appellee] on the April, May, June, or July, 2004 trial term lists. **According to the official record**, the Commonwealth failed to do so." Trial Court Opinion, 4/2/15, at 21 (emphasis added).

In sum, I do not doubt the Commonwealth was prejudiced by the loss of evidence and faded memories due to Appellee's lack of diligence in pursuing discharge. Had Appellee appeared in October as scheduled and litigated a motion to dismiss, the result may well have been different. The original trial judge would probably have been present and may have had his own memory, records, log book, or other source of information to rely upon in determining whether Appellee or his counsel had notice of the proceedings.[4]

Therefore, I would hold Appellee failed to timely pursue his right to discharge. I recognize Rule 600 does not itself impose any time limitation on when the motion must be raised and we are not authorized to promulgate rules of procedure. Pa. Const. art. V, § 10(c). However, as former Chief Justice Castille stated, "I have no fixed objection to the [Superior Court]

---

[4] If Appellee's attorney received personal notice of the trial date, he could not ethically represent that the matter had not been set for trial.

undertaking to adopt efficiencies and improvements in order to better serve justice." **Pitts**, 981 A.2d at 881 (Castille, C.J, concurring). I believe my suggested disposition is faithful to that directive.

Accordingly, I would hold Appellee forfeited his right to seek rule-based discharge by failing to pursue the right in a timely fashion. Hence, I concur in the result.