2015 PA Super 164

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CHARLES DAVIS, | |
| Appellee | No. 2726 EDA 2013 |

Appeal from the Order entered August 22, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No:  CP-51-CR-0012499-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, ALLEN, LAZARUS, MUNDY, and STABILE, JJ.

OPINION BY ALLEN, J.:                                    **FILED JULY 29, 2015**

The Commonwealth appeals from the trial court's order suppressing confidential statements which Charles Davis ("Davis") uttered to his spouse, Nicole Walton ("Walton"), outside the presence of third parties.  After careful consideration, we affirm.

The trial court detailed the following factual and procedural background of this case as follows:

> On July 19, 2012, [Davis] and his alleged co-conspirator, Ali Marsh [("Marsh")], were charged with murder, attempted murder, robbery, burglary, aggravated assault, criminal conspiracy, possession of an instrument of crime (PIC) and violations of §§ 6105, 6106 and 6108 of the Uniform Firearms Act in connection with a home invasion shooting that left a man dead and his wife seriously injured.
>
> [Davis'] preliminary hearing was held on October 17, 2012 before the Honorable Patrick F. Dugan.  Sherrell Paul, the decedent's wife, testified that she and her husband were at

home sleeping on the night of the shooting. Sometime between 10:30 and 11:00 pm, Ms. Paul was awakened by her husband's voice. When she went to investigate, Ms. Paul saw an unknown man in the hallway outside her bedroom. A struggle ensued. Ms. Paul kicked the unknown man down the stairs. At that point, shots rang out and Ms. Paul was struck. As she lay on the hallway floor, another unknown male ran past her and into her bedroom. Moments later, the second male came out, grabbed Ms. Paul and demanded money. When Ms. Paul responded that she did not have any, the second male shot her again, inflicting multiple gunshot wounds. (N.T., 10/17/12, pp. 13-22).

Although Ms. Paul could not positively identify the assailants, she did provide a general description of both men. The first – the one that she struggled with initially – she described as black with a beard, wearing ["]a black Nike hoody." (N.T., 10/17/12, p. 15). The second man she also described as black. He too had a beard, but was thinner than the first man and had a lighter complexion. (N.T., 10/17/12, p. 17).

The Commonwealth also called [Davis'] wife, [Walton], to testify about his involvement in the shooting. Walton testified that she was at home sleeping on the night in question when [Davis] called her. According to Walton, Davis sounded anxious and told her that he needed her. Walton then drove to a pre-arranged location, where she met Davis and Marsh. She noticed that Marsh had been shot in the foot and was bleeding. Walton and Davis helped Marsh into Walton's truck. When Walton suggested taking Marsh to the closest hospital in Philadelphia, Marsh insisted that she take him to a hospital in another state. Ultimately, Walton drove Marsh to a hospital in Maryland. When they arrived at the hospital, Walton and Davis dropped Marsh off and returned to Philadelphia. Walton claimed inexplicably, that during the two hour ride to Maryland, the three of them never discussed what really happened on the night of the shooting. Instead, they discussed fabricating a story that Marsh had been robbed and shot in the foot. (N.T., 10/17/2, pp. 23-35).

The Commonwealth, over the objection of defense counsel, was permitted to illicit testimony about private incriminating conversations between [Davis] and Walton. During those conversations, which took place on the night of and a few days after the incident, [Davis] made numerous admissions to Walton about his involvement in the fatal shooting. Walton denied

making the statements and claimed that they were fabricated by police.

> [FN:1  Walton's statements were admitted as substantive evidence.  *See* <u>Commonwealth v. Liveley</u>, 530 Pa. 464, 610 A.2d 7 (Pa. 1992).  In one statement, Walton told police that after returning to Philadelphia[,] Davis told her: "[w]e got into some shit last night, Nic.  It's bad.  Real bad."  In a second statement, Walton told police that she met Davis at 50th Street and Baltimore Avenue.  Walton asked Davis if he had been involved in the murder in question.  He responded: "Yeah, this shit is bad."  When she then inquired why they had shot the deceased's wife, [Davis] said "that was Ali's dumb ass.  He said he got his self shot and them n-----s left him there."  Davis also told Walton that he had to go back into the house to drag Ali out because Ali could not move.  No third parties were present during either of these conversations between Ms. Walton and Davis. (N.T., 10/17/12, pp. 27-36, 45-52, 61-64).]

On cross-examination, Walton stated that she believed the conversations with her husband were confidential and that they were not made in the presence of any third parties.

The Commonwealth and defense also agreed to several stipulations.  First, the decedent, John Derek Paul, was shot to death inside his home at 3113 Cecil B. Moore Avenue on March 5, 2012.  Second, there was a blood trail [that] led from the inside of the decedent's home out to the street.  This blood was tested and ultimately found to match that of [Marsh].  Finally, six .45 caliber and six .40 caliber cartridge casings were found in the entryway of the home, on the steps leading to the second floor and on the second floor landing.  (N.T., 10/17/12, pp. 10-11).

At the conclusion of [Davis'] preliminary hearing, the presiding Municipal Court Judge held both Davis and Marsh for trial on all charges.

Davis filed a Motion to Quash with this court, claiming that the aforementioned private conversations between Davis and his wife were protected by the spousal testimony/confidential communications privileges of 42 Pa.C.S.A. §§ 5913 and 5914 and had improperly been admitted at the preliminary hearing.  Without those statements, the defense argued, the

- 3 -

Commonwealth failed to establish a *prima facie* case against Davis on any charges relating to the home invasion itself.

On May 2, 2013, at a hearing before this court, the Commonwealth argued that although the disputed testimony fell under the spousal testimony/confidential communication privilege statutes, it was nonetheless admissible under a crime fraud exception. In support of its claim, the Commonwealth cited numerous federal cases in which confidential communications made in furtherance of a crime or criminal activity were deemed admissible. *See*: U.S. v. James Hill, 967 F.2d 902 (3rd Cir. 1992); U.S. v. Ammar, 714 F.2d 238 (3rd Cir. 1983); U.S. v. Broome, 732 F.2d 363 (4th Cir.) *cert. denied*, 469 U.S. 855 (1984); U.S. v. King, 541 F.3d 1143 (5th Cir. 2008); U.S. v. Neal, 743 F.2d 1441 (10th Cir. 1984).

This court initially agreed with the Commonwealth's assertion. It ruled that the statements were admissible under the crime fraud exception and denied the Motion to Quash.

Davis filed a Motion for Reconsideration in which he cited Commonwealth v. Savage, 695 A.2d 820 (Pa. Super. 1997), wherein former President Judge Vincent A. Cirillo, writing for the majority, directly confronted this issue. The [Superior C]ourt in Savage held that there was no crime/fraud exception to the spousal privilege for confidential communications.

On August 22, 2013, after reviewing Savage and considering further arguments, this court reversed its original position on the admissibility of Walton's testimony about the confidential communications with her husband. The court ruled such testimony was inadmissible. However, based upon the totality of the admissible evidence presented at the preliminary hearing, and considering that evidence and the reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, this court ruled that even without the confidential communication testimony, the Commonwealth had made a *prima facie* case against Davis.

On September 23, 2013, the Commonwealth filed the instant interlocutory appeal along with a Statement of Matters Complained of on Appeal, alleging that the court erred in suppressing Ms. Walton's testimony. On October 4, 2013, [Davis] filed a cross-appeal. In his Statement of Matters Complained of on Appeal, filed on November 8, 2013, [Davis]

alleged that the court erred by not granting his *Habeas Corpus* motion for discharge.

Trial Court Opinion, 3/25/14, at 1-5.

On March 25, 2014, the trial court issued its opinion pursuant to Pa.R.A.P. 1925. On October 28, 2014, our Court issued a *per curiam* order determining that the Commonwealth's appeal "should be considered by the Court sitting *en banc*[.]" Order, 10/28/14, at 1. On January 28, 2015, by *per curiam* order, we quashed as interlocutory Davis' cross-appeal at 2972 EDA 2013 from the trial court's denial of Davis' *habeas corpus* motion for discharge.

Instantly, we consider the Commonwealth's sole issue:

Should the [trial] court's exclusionary order, which depends on the erroneous premise that there is no crime fraud exception to the marital privilege in criminal cases, be reversed?

Commonwealth Brief at 2.

In support of its contention that the confidential communications between Davis and Walton "should be deemed admissible under the crime-fraud exception to the marital privilege," the Commonwealth argues:

[T]he Pennsylvania Supreme Court has recognized a crime-fraud exception to the indistinguishable attorney-client privilege in criminal cases. This Court itself has recognized a crime-fraud exception to the marital privilege in *civil* cases. And a significant majority of other jurisdictions have recognized a crime-fraud exception to the marital privilege in both civil and criminal cases.

Commonwealth Brief at 10 (emphasis in original). The Commonwealth emphasizes that the "statute codifying the attorney-client privilege in

criminal cases is identical to that codifying the marital privilege, except that the former statute has the words 'counsel' and 'client' where the latter has 'husband' and 'wife'." *Id.* at 12-13. The Commonwealth further asserts that "[our] Court has recognized for over seventy years that the crime-fraud exception applies to the marital privilege in *civil* cases," and that "the only textual difference between the statute codifying the marital privilege in civil cases and that codifying the same privilege in criminal cases is that the former uses the word 'civil' where the latter uses the word 'criminal'." *Id.* at 14 (emphasis in original).

In Pennsylvania, confidential marital communications are protected from disclosure in criminal proceedings:

> **§ 5914. Confidential communications between spouses**
>
> Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S. § 5914.

Contrary to the Commonwealth's arguments, our precedent in ***Savage*** controls our affirmance of the trial court's suppression order. We stated:

> The public policy sought to be enhanced by the privilege for confidential communication between spouses "is the preservation of marital harmony and the resultant benefits to society from that harmony." *Commonwealth v. Clark,* 347 Pa.Super. 128, 130-31, 500 A.2d 440, 441 (1985) (citing *Hunter v. Hunter,* 169 Pa.Super. 498, 83 A.2d 401 (1951)). "The privilege that protects information privately disclosed between husband and wife in the confidence of the marital relationship was once described by the United States Supreme Court as 'the best

solace of human existence.'" *Clark,* 347 Pa.Super. at 132, 500 A.2d at 442 (quoting *Stein v. Bowman,* 38 U.S.(13 Pet.) 209, at 223, 10 L.Ed. 129 (1839) in *Trammel v. U.S.,* 445 U.S. 40, 51, 100 S.Ct. 906, 912-13, 63 L.Ed.2d 186 (1980)).

*Savage*, 695 A.2d at 822-823.

In unanimously declining to extend to criminal proceedings the crime-fraud exception to privileged marital communications which may be invoked in civil matters, we explained:

[] Even if a husband or wife may be summoned to testify adverse to his or her spouse, however, he or she is not competent to testify to confidential communications pursuant to section 5914. *Newman,* 534 Pa. at 430-32, 633 A.2d at 1072; *Hancharik,* 534 Pa. at 440-42, 633 A.2d at 1077.

\*\*\*

[] [T] the Commonwealth asks this court to find that Savage's claim is "not of arguable merit because the spousal privilege should not extend to communications in furtherance of criminal activity," and that public policy and logic dictate as such. The Commonwealth argues, by analogy, that this court has suggested that communications in furtherance of a fraud would not be privileged in a civil action. *See Kine v. Forman,* 205 Pa.Super. 305, 209 A.2d 1 (1965). We decline to accept the Commonwealth's invitation to extend such reasoning to this criminal case. By its plain language, section 5914 (protecting confidential communications between spouses), governs "criminal proceeding[s]." 42 Pa.C.S.A. § 5914. The Commonwealth's policy argument must fail; such a challenge is more appropriately directed to the legislature.

*Savage*, 695 A.2d at 823-824 (footnote omitted).

Further, our Statutory Construction Act provides that "[w]hen the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §

1921(b); *see Commonwealth v. Valle-Velez,* 995 A.2d 1264, 1270 (Pa. Super. 2010) (declining "to look beyond the express statutory language at the policy issues surrounding the spousal privilege statute" found in related Section 5913).

We recently explained:

> We recognize that "[c]ommunications between spouses are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption." *Commonwealth v. Burrows,* 779 A.2d 509, 514 (Pa.Super. 2001) (internal citation omitted). The privilege under 42 Pa.C.S.A. § 5914 prevents a spouse from testifying against the declarant-defendant spouse regarding "any communications which were confidential **when made** and which were made during the marital relationship." *Commonwealth v. May,* 540 Pa. 237, 656 A.2d 1335, 1341–1342 (1995) (footnote omitted) (emphasis supplied). Our Supreme Court has explained that where the challenged spousal communication was divulged by the declarant-defendant to third parties, the statement "does not qualify as [a] confidential communication." *Commonwealth v. Hancharik,* 534 Pa. 435, 633 A.2d 1074, 1077 (1993).

> ***

> Further, our Supreme Court explained that "[t]he Court in *May* recognized that the question of what is a 'confidential' communication turns in part on the reasonable expectation the declarant has that the communication will remain confidential." *Commonwealth v. Spetzer,* 572 Pa. 17, 813 A.2d 707, 722 (2002). The *Spetzer* court indicated that "a husband who describes to his wife his previous rape of her child ... can have no reasonable expectation under Pennsylvania law that that communication will remain confidential." *Id.* []

*Commonwealth v. G.Y.,* 63 A.3d 259, 267 (Pa. Super. 2013) (emphasis in original).

In **G.Y.**, we reversed the PCRA court's finding of privilege related to the marital communication between appellant and his spouse. In finding the communication was not privileged, we emphasized that appellant had previously disclosed orally, in writing, and in a videotaped statement, the same information to third parties, including law enforcement. Accordingly, we determined that appellant's statement to his spouse was "not 'confidential when made,' nor d[id] it 'qualify as [a] confidential communication.'" **Id.** Moreover, we observed that appellant had testified regarding the same challenged testimony, thus waiving any privilege regarding the testimony. **Id.** at 267-268.

Here, the Commonwealth, as the party opposing the application of the privilege, has not met the burden of overcoming the presumption that Davis' communications with his wife, which occurred outside the presence of third parties, were confidential. Davis' statement to Walton that "we got into some shit last night, Nic," which was " bad … [r]eal bad," along with Davis' responses to Walton's questions regarding the burglary and homeowner's death, where Davis admitted his involvement in the crimes, Marsh's shooting of Ms. Paul, and Davis' retrieval of Marsh from the Paul home, were statements "imbued with an aura of a sharing disclosure precipitated largely due to the closeness spouses share." **See** Trial Court Opinion, 3/25/14, at 2-3, n.1; **see also Commonwealth v. Luster,** 71 A.3d 1029, 1046 (Pa. Super. 2013) (*en banc*) (citation omitted). Davis' statements were uttered during the marital relationship, were confidential when made, had not been

previously divulged by Davis, and were not reasonably anticipated by him to be divulged. Davis did not waive the confidentiality of the statements, nor did he testify about them. Accordingly, Section 5914 applies.

Davis concedes that "the testimony of [Walton] as to what she witnessed and as to any conversations she had with her husband in the presence of [Marsh] are admissible." Davis' Brief at 9. Davis also acknowledged:

> In this case, [Pennsylvania law] would permit the admission of [Walton's] testimony that she went to 51st Street [in Philadelphia] on the night of the homicide, saw [Davis] arrive in a vehicle and arrive at that location with [Marsh] who was shot in the foot. It would also permit her testimony that she drove the three of them to a hospital in Maryland where Marsh was left to be treated.

Davis' Memorandum of Law in Support of Motion to Quash Transcripts, 3/7/13, at 8 (unnumbered). We agree. Section 5914 is not applicable to Walton's testimony that she was asleep when she received a call from Davis seeking transportation for Davis and Marsh to a hospital. **See Luster, supra,** at 1045-1046 (reiterating that to be privileged, a communication must be of a confidential nature). Neither does Section 5914 protect Walton's observations that as she arrived to pick up Davis and Marsh, she saw Davis alight from a vehicle with an injured Marsh. **See Commonwealth v. McBurrows,** 779 A.2d 509, 519 (Pa. Super. 2001) ("Pennsylvania law does not extend the husband-wife privilege set forth in § 5914 to one spouse's observance of the act of another spouse"). Likewise,

- 10 -

Section 5914 does not render inadmissible the conversations Davis and Walton had with, and in the presence of, Marsh, on their drive to Maryland, during which a false robbery story was concocted to explain Marsh's injuries. *See Commonwealth v. Mattison,* 82 A.3d 386, 394 (Pa. 2013) (internal citation omitted) ("As a general matter, the presence of third parties at the time the communication is made negates the confidential nature of the communication.").

In sum, consonant with Pennsylvania statutory construction principles and existing jurisprudence, the trial court correctly applied 42 Pa.C.S. § 5914 to suppress Davis' confidential communications to his wife which occurred outside the presence of third parties. Therefore, we affirm the trial court's suppression order.

Order affirmed. Jurisdiction relinquished. Case remanded for further proceedings consistent with our disposition.

P.J. Gantman, P.J.E. Bender, and Judges Donohue, Shogan, Lazarus, Mundy and Stabile join the Opinion.

Judge Panella concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2015

- 11 -