J-A25001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES DAVIS, | : | |
| | : | |
| Appellant | : | No. 3187 EDA 2016 |

Appeal from the Judgment of Sentence September 16, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Divisio.: CP-51-CR-0012499-2012

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 30, 2019**

Appellant, Charles Davis, appeals from the Judgment of Sentence of life imprisonment followed by twenty to forty years of incarceration, imposed on September 16, 2016, following his conviction by jury for Second-Degree Murder and numerous related offenses.  We affirm.

We adopt the following statement of facts from the trial court's Pa.R.A.P. 1925(a) Opinion and the certified record.  ***See*** Trial Ct. Op., 4/12/17, at 2-7; N.T. Trial, 9/7-14/16.

On March 5, 2012, Appellant and his Co-Conspirator, Ali Marsh, illegally entered the home of John Paul, his wife Sherrel, and their two minor children, located in North Philadelphia.  The family was asleep at the time, but Mr. Paul awoke at the sound of the intruders.  He exited his bedroom to investigate and encountered the intruders, who then shot him in the chest.

The sounds of this altercation alerted Mrs. Paul. She, too, left the bedroom and encountered the intruders in the hallway. Following a struggle, one of the intruders shot her. She collapsed and was unable to move her lower extremities. Nevertheless, Mrs. Paul attempted to crawl toward her children's bedroom, trying to protect them from the intruders. One of the intruders demanded money, but, upon learning there was no money in the home, shot Mrs. Paul numerous times.[1]

The intruders then fled the home. One of the children called 911. Police and emergency medical personnel responded to the scene. Taken to a nearby hospital, Mr. Paul was pronounced dead, but Mrs. Paul survived despite numerous bullet wounds.

Investigators secured ballistic and other forensic evidence from the home. Ballistic evidence confirmed that two firearms were used in the assaults. Testing performed on blood samples taken from the scene confirmed Co-Conspirator Marsh's presence.

Upon fleeing the home, Appellant called his wife, Nicole Walton. Ms. Walton agreed to pick them up at a location in West Philadelphia. Upon her arrival, she noticed that Marsh was injured. Marsh directed Walton to drive him to a hospital outside the city, so the group proceeded to a hospital in Maryland. Along the way, the group agreed on a cover story, falsely asserting

---

[1] During their assault upon the Paul family, Marsh suffered a gunshot wound to his leg. It is not clear whether Appellant accidentally shot his Co-Conspirator or the wound was self-inflicted.

that Marsh was the victim of a robbery in Delaware. Ms. Walton and Appellant left Marsh in Maryland, and Ms. Walton drove Appellant back to Pennsylvania.

Investigators secured cell phone record evidence. Call logs established that calls occurred between Appellant and Marsh prior to the incident and between Appellant and Ms. Walton after the incident. In addition, investigators used call detail records to approximate Appellant's location throughout the early morning hours of March 5, 2012. This evidence established that Appellant met Marsh in West Philadelphia. From there, the two men travelled together to North Philadelphia, returned to West Philadelphia, then left Pennsylvania for Maryland. Finally, the call detail records established that Appellant returned to Pennsylvania.

Almost immediately, the group's story unraveled, but Appellant eluded arrest until July 2012. Thereafter, the Commonwealth charged him with the following crimes: Murder, generally, Attempted Murder, Conspiracy (two counts), Aggravated Assault, Robbery, Burglary (two counts), Possession of Firearms Prohibited, Firearms Not to be Carried without a License, Carrying Firearms on Public Streets in Philadelphia, and Possessing Instruments of Crime.[2] Information, Docket No. CP-51-CR0012499-2012, 10/24/12.

In October 2012, a Preliminary Hearing commenced. Over the objection of Appellant, the Commonwealth presented statements given by Ms. Walton to the police. These statements described confidential communications

---

[2] 18 Pa.C.S. §§ 2502, 901(a), 903(a), 2702(a)(1), 3701(a)(1)(i), 3502(a)(1), 6105(a)(1), 6106(a)(1), 6108, 907(a), respectively.

J-A25001-18

between Ms. Walton and Appellant. Following the hearing, Appellant filed a Motion to Quash with the trial court. Initially, the court agreed with arguments levied by the Commonwealth, which asserted that such communications were admissible under a crime/fraud exception to the spousal privilege for confidential communications.[3] N.T. Hearing, 5/2/13, at 5-6; Order, 5/2/13. However, upon reconsideration, the trial court concluded that there was no exception to the privilege and that the statements were inadmissible. N.T. Hearing, 8/22/13, at 15.[4] Nevertheless, the court determined that there was sufficient admissible evidence to establish a *prima facie* case against Appellant. N.T. Hearing, 9/12/13, at 5-6, 9-10.

The Commonwealth filed an interlocutory appeal in this Court, certifying that the trial court's ruling substantially handicapped its prosecution. Commonwealth's Notice of Appeal, 9/23/13. Upon review, we affirmed, and the Supreme Court denied the Commonwealth's Petition for further review.

---

[3] **See** 42 Pa.C.S. § 5914.

[4] The trial court issued an Order, purportedly granting Appellant's Motion *in Limine*. **See** Trial Court Order, 8/22/13. Appellant did not file such a motion. Nevertheless, this Order accurately reflects the **substance** of the court's ruling. **See** N.T. Hearing, 8/22/13, at 15 ("So for the record, I'm vacating my earlier order allowing [Appellant's] wife to testify against him and I am ruling that such testimony is barred by [42 Pa.C.S. § 5914]."). Moreover, the court's ruling was responsive to Appellant's repeated assertion that such testimony was inadmissible. **See** Motion to Quash, 10/31/12; Motion to Reopen Motion to Quash, 7/31/13.

*Commonwealth v. Davis*, 121 A.3d 551 (Pa. Super. 2015) (*en banc*), *appeal denied*, 128 A.3d 219 (Pa. 2015).[5]

Upon remand to the trial court, Appellant filed a Motion for Release Pursuant to Rule 600, essentially asserting that the Commonwealth did not timely bring him to trial because it had pursued a frivolous appeal of the trial court's confidential spousal communications ruling. **See** Motion for Release Pursuant to Rule 600, 6/23/16; N.T. Trial, 9/8/16, at 5-11. The court denied Appellant's Motion. N.T. Trial, 9/8/16, at 11.

Trial commenced before a jury in September 2016. Following its deliberations, the jury convicted Appellant on all counts.[6] Thereafter, the court imposed sentence as set forth above.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.

_____

[5] The General Assembly has defined two spousal privileges relevant to the Commonwealth's interlocutory appeal. **See** 42 Pa.C.S. §§ 5913, 5914. Both limit testimony from one spouse against another. **Id.** However, there is a substantial distinction between the privileges. Section 5913, which defines a spouse's privilege "not to testify against his or her then lawful spouse," includes an exception for criminal proceedings involving charges of murder. 42 Pa.C.S. § 5913(4). Section 5914, which prohibits testimony regarding confidential communications between spouses, includes no such exception. 42 Pa.C.S. § 5914. In its appeal, the Commonwealth sought recognition of a crime-fraud exception to the confidential communications privilege defined in Section 5914. **Id.** at 555. We rejected its arguments. **Id.** at 555-558.

[6] The trial court determined Appellant's guilt for Possession of Firearms Prohibited. Trial Ct. Op. at 2 n.2.

In this Court, Appellant filed an Application to Amend his Pa.R.A.P. 1925(b) Statement. Application to Amend, 1/24/18. We granted Appellant's Application and remanded to the trial court for further proceedings. Order, 2/16/18. Upon remand, Appellant filed Supplemental Statements pursuant to Pa.R.A.P. 1925(b), and the trial court issued a Supplemental Opinion. Supplemental Statement, 3/8/18; Supplemental Statement (2), 4/4/18 (denoting if and where in the record Appellant preserved issues raised therein); Trial Ct. Supplemental Op., 4/10/18.

Appellant raises the following issues on appeal, restated for clarity:

1. Whether the trial court abused its discretion when it denied Appellant's Motion for Release Pursuant to Rule 600, as the Commonwealth delayed his trial for "approximately 805 days," pursuing a frivolous appeal of the court's confidential spousal communications ruling; and

2. Whether the trial court abused its discretion when it permitted expert testimony regarding cell phone location tracking data without first evaluating the "reliability, scientific community acceptance, the standard levels of deviation, and the margins for error" associated with this evidence.

Appellant's Br. at 2-3.

In his first issue, Appellant contends the trial court abused its discretion when it denied his Motion for Release Pursuant to Rule 600. Appellant's Br. at 16. According to Appellant, the Commonwealth appealed the trial court's confidential spousal communications ruling in bad faith. *Id.* at 22-26 (asserting that the Commonwealth knew or should have known that the law controlling this privilege is unambiguous and well settled). By Appellant's

calculation, the Commonwealth's frivolous appeal delayed Appellant's trial by 805 days—a substantial delay prejudicial to Appellant. *Id.* at 26-27. Thus, Appellant concludes, this delay violated his right to a speedy trial, and the trial court should have dismissed the charges against him with prejudice. *Id.* at 14, 29.

The purpose of Pennsylvania Rule of Criminal Procedure 600 is to protect an accused's right to a speedy trial while also protecting society's right to effectively prosecute criminal cases. *Commonwealth v. Armstrong*, 74 A.3d 228, 234-35 (Pa. Super. 2013); Pa.R.Crim.P. 600 *cmt*. Generally, under the Rule, trial must commence within 365 days from the date on which a criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). "[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence." Pa.R.Crim.P. 600(C)(1). "Any other periods of delay shall be excluded from the computation." *Id.*[7]

---

[7] As noted by the Commonwealth in its Brief, *see* Commonwealth's Br. at 8-9, Appellant's argument conflates a Rule 600 analysis with a distinct, balancing test first defined by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972) (crafting the test to ensure a defendant's right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments). *See* Appellant's Br. at 17-22, 26-27. In *Commonwealth v. Hamilton*, 297 A.2d 127, 130-33 (Pa. 1972), the Pennsylvania Supreme Court deemed this balancing test inadequate to ensure a defendant's right to a speedy trial under the Pennsylvania Constitution. The Court has also suggested that "the prompt trial rule [*i.e.*, Rule 600] . . . represents the sole means of securing a

We review the denial of a Rule 600 motion to determine whether the trial court abused its discretion. *Armstrong*, 74 A.3d at 234. "Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration." *Id.* It is not merely an error of judgment. *Id.* (citation and quotation omitted). Rather, an abuse of discretion occurs where "the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record[.]" *Id.* (citation and quotation omitted).

Essentially, Appellant asserts that the period of time during which the Commonwealth pursued its interlocutory appeal should be included in a Rule

_____

defendant's state constitutional right to a speedy trial." *Commonwealth v. Meadius*, 870 A.2d 802, 803 n.1 (Pa. 2005) (citing *Commonwealth v. Whitaker*, 359 A.2d 174, 176 (Pa. 1976). The Court has continued to apply the balancing test in cases where an appellant presents independent claims premised on both the procedural rule and the constitutional guarantees. *Commonwealth v. DeBlase*, 665 A.2d 427, 431 (Pa. 1995). Here, Appellant premised his Motion for Release solely upon Rule 600. *See* Motion for Release. Accordingly, the *Barker* balancing test is inapplicable. *Commonwealth v. Colon*, 87 A.3d 352, 357 n.2 (Pa. Super. 2014) ("Where the appellant does not raise the separate constitutional issue apart from the Rule 600 issue as a basis for the motion to dismiss, there is no need for the *Barker* balancing test to be examined."). To the extent Appellant seeks to raise a constitutional claim in this appeal, we deem it waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

600 computation because the Commonwealth failed to act with due diligence.[8] We disagree.

Initially, we observe that the procedural history of this case undermines Appellant's assertion that the Commonwealth's interlocutory appeal was frivolous or in bad faith. This Court determined to hear the Commonwealth's appeal *en banc*, suggesting the issues raised therein had "potential for a significant impact upon developing law or public policy." 210 Pa. Code § 65.38(D)(5); **see also** Order, No. 2726 EDA 2013, 10/28/14 (directing "the case be listed before the next available *en banc* panel").

Moreover, in **Commonwealth v. Matis**, 710 A.2d 12 (Pa. 1998), our Supreme Court examined a Rule 600 issue similar to that raised by Appellant here. In that case, the Commonwealth filed a criminal complaint charging the

---

[8] To be clear, Appellant's contention is narrow. The following dates are relevant: the Commonwealth filed an Information charging Appellant on October 24, 2012; the Commonwealth filed its Notice of Appeal on September 23, 2013; the Pennsylvania Supreme Court denied the Commonwealth's Petition for Allowance of Appeal (PAA) on December 7, 2015; and trial commenced on September 8, 2016. The time elapsed between the Information and trial is 1415 days. However, Appellant concedes that any periods of delay prior to the Commonwealth's interlocutory appeal are attributable to Appellant. **See** Motion for Release Pursuant to Rule 600 at 2 ¶ 11; N.T. Trial, 9/8/16, at 5. Thus, we exclude that time. Pa.R.Crim.P. 600(C)(1). The time elapsed between the Notice of Appeal and trial is 1081 days. If the Commonwealth's interlocutory appeal period is included in the Rule 600 computation, then the Commonwealth failed to bring Appellant to trial promptly. Pa.R.Crim.P. 600(A)(2)(a). On the other hand, if the appellate period is excluded, trial commenced in 276 days (*i.e.*, the time elapsed between the PAA denial and trial), and no Rule 600 violation occurred. **Id.** **See** discussion, *infra*.

defendant in the deaths of two people caused by him while he was driving under the influence of alcohol.  *Id.* at 13-14.  The Commonwealth sought a continuance in order to secure necessary testimony at trial from a witness who was unavailable.  *Id.* at 14.  The trial court denied the continuance, and the Commonwealth appealed, certifying that the court's ruling substantially impaired its prosecution.  *Id.* at 15.  This Court quashed the interlocutory appeal and remanded for trial.  *Id.*

On remand, the defendant filed a motion to dismiss the charges, asserting that the Commonwealth had failed to exercise due diligence in bringing him to trial and had filed a frivolous appeal in bad faith.[9]  *Id.* Following a hearing, the court discharged the defendant.  *Id.*

The Commonwealth appealed, and this Court reversed, concluding that the period of time comprising the pendency of the Commonwealth's interlocutory appeal was excludable.  *Id.*  Upon further review, the Supreme Court addressed directly the Commonwealth's right to appeal adverse evidentiary rulings and declined to penalize the Commonwealth for exercising that right, provided that it certifies that such an appeal is necessary.  *Id.* at 17-19.  According to the Court, the Commonwealth's certification is "not contestable" and establishes the Commonwealth's due diligence.  *Id.* Thus, the Court remanded for trial.  *Id.*

---

[9] The defendant brought the motion pursuant to Rule 1100, the precursor to Pa.R.Crim.P. 600.

Similarly here, the trial court determined that Ms. Walton's confidential communications with Appellant were privileged, thus denying the Commonwealth an opportunity to present all of its evidence. The Commonwealth timely filed an interlocutory appeal and certified that this adverse evidentiary ruling substantially impaired its prosecution. Commonwealth's Notice of Appeal. This certification is not contestable and establishes that the Commonwealth exercised due diligence. *Matis*, *supra*.

The Commonwealth's interlocutory appeal was neither frivolous nor pursued in bad faith. Therefore, the 805 days that elapsed during the pendency of the appeal are excluded from the Rule 600 computation. Pa.R.Crim.P. 600(C)(1). The time elapsed between the PAA denial, which occurred on December 7, 2015, and Appellant's trial, which commenced on September 8, 2016, is 276 days. *See supra* n.8. Therefore, no violation of Rule 600 occurred. Pa.R.Crim.P. 600(A)(2)(a). Accordingly, we discern no abuse of the court's discretion in denying Appellant's Motion for Release. *Armstrong*, *supra*.

In his second issue, Appellant contends the trial court abused its discretion when it permitted expert testimony to establish Appellant's approximate location throughout the early morning hours of March 5, 2012. *See* Appellant's Br. at 29. According to Appellant, the foundation of this evidence was "a novel science" that lacked "general acceptance in the relevant scientific community." *Id.* at 29-30. Thus, Appellant implies, prior to

admitting this evidence, the court should have conducted a **Frye**[10] hearing to evaluate the scientific methodology relied upon by the Commonwealth's expert.[11]

The admission of expert testimony is subject "largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." **Commonwealth v. Cramer**, 195 A.3d 594, 605 (Pa. Super. 2018) (citation omitted).

This Court has explained that scientific evidence is "novel" when "there is a legitimate dispute regarding the reliability of the expert's conclusions." **Commonwealth v. Safka**, 95 A.3d 304, 307 (Pa. Super. 2014) (citation and quotation omitted). To be admissible at trial, the methodology underlying the novel scientific evidence "must have gained general acceptance in the relevant scientific community." **Commonwealth v. Powell**, 171 A.3d 294, 307 (Pa. Super. 2017).

However, a trial court is not required to conduct a **Frye** hearing any time a party seeks to introduce scientific evidence. "Rather, a hearing is warranted only when the trial court has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a

---

[10] **See Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

[11] To be clear, Appellant does **not** assert specifically that the trial court erred in failing to hold a **Frye** hearing. **See generally** Appellant's Br.; **but see** Supplemental Statement; Supplemental Statement (2). Rather, Appellant asserts the admission of this scientific evidence constitutes an abuse of discretion. **See** Appellant's Br. at 29.

conventional fashion in reaching his or her conclusions." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1091 (Pa. 2017) (citation and internal quotation marks omitted); ***see also Commonwealth v. Freeman***, 128 A.3d 1231, 1246-47 (Pa. Super. 2015) (discerning no abuse of discretion when trial court did not conduct *sua sponte* a ***Frye*** hearing to determine whether cell phone location evidence relied upon accepted scientific methodology, despite the filing by defendant of a motion *in limine* seeking to exclude such evidence, because the defendant did not request specifically a ***Frye*** hearing).

Here, Appellant did not object to this evidence at trial. N.T. Trial, 9/14/16, at 48-126 (testimony of Special Agent William Shute). Further, Appellant did not object to the admission of the Commonwealth's exhibits supporting S.A. Shute's testimony. ***Id.*** at 129. Finally, Appellant **concedes** that he never requested a ***Frye*** hearing. Supplemental Statement (2) at ¶ 3(a). For these reasons, we deem Appellant's second issue waived. Pa.R.A.P. 302(a).[12]

Also before this Court are two Applications filed by Appellant. In the first, Appellant seeks to correct omissions in the record. Application for

_____

[12] In his Brief, Appellant also asserts that S.A. Shute lacked sufficient scientific or technical expertise to properly explain the methodology used to establish Appellant's approximate location using cell phone call detail records. Appellant's Br. at 31-32. Appellant did not object to his qualification as an expert witness at trial. N.T. Trial, 9/14/16, at 36-47. Moreover, Appellant failed to preserve this claim in any of his Pa.R.A.P. 1925(b) Statements. Pa.R.A.P. 1925(b) Statement, 11/8/13; Supplemental Statement; Supplemental Statement (2). This claim, too, is waived. Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(4)(vii).

Correction of the Original Record, 9/7/18 (asserting that certain transcripts were missing from the Certified Record). We have reviewed the transcripts and conclude that no relief is due. Principally, it appears that the trial court's Order, entered August 22, 2013, purportedly granting Appellant's Motion *in Limine* has led to some confusion. As stated previously, Appellant did not file such a motion. ***See supra*** n.4. Rather, the court's Order responded to substantive assertions by Appellant that certain testimony of Appellant's wife was inadmissible. ***Id.*** Transcripts of the Hearings held to resolve Appellant's assertions are included in the Certified Record. N.T. Hearing, 3/28/13; N.T. Hearing, 5/2/13; N.T. Hearing, 8/22/13.

In the second, David Wesley Cornish, Esq. seeks to withdraw his representation of Appellant. Application to Withdraw as Counsel, 3/11/19. Counsel avers that he has completed all duties for this appeal and that Appellant has hired new counsel. ***Id.*** In light of our disposition, Attorney Cornish's request is moot. Further, to date, no new counsel has entered an appearance on behalf of Appellant. Accordingly, we deny Attorney Cornish relief.

Application for Correction of the Original Record denied; Application to Withdraw as Counsel denied; Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/19