J-S07028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                     :            PENNSYLVANIA
                                                     :
                     v.                       :
                                                       :
                                                       :
MATTHEW ALLEN LAPOINT               :
                                                       :
                     Appellant              :       No. 1179 MDA 2024

Appeal from the PCRA Order Entered July 24, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000630-2022

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED: JUNE 24, 2025**

Matthew Allen LaPoint appeals *pro se* from the order denying his Post Conviction Relief Act ("PCRA") petition. ***See*** 42 Pa.C.S.A. §§ 9541-9546. LaPoint argues that counsel was ineffective. We affirm.

The facts of this case were previously summarized as follows:

> On December 14, 2021, police were called to [LaPoint's residence], following a domestic dispute between [LaPoint] and his wife. The couple's fifteen-year-old daughter, K.L., called 911 because [LaPoint] and his wife were engaged in a verbal and physical altercation, where [LaPoint's] wife allegedly struck him in the face. Shortly thereafter, [LaPoint's] wife exited the residence, and the couple's eleven-year-old daughter, G.L., witnessed [LaPoint] with a shotgun in his hand as he left the home through the front door. When police arrived, it was determined that [LaPoint] had been convicted of a second-degree felony in Florida, and as such, he was a person not to possess a firearm. After a search, police recovered two shotguns and one shotgun shell. [LaPoint] was then arrested and subsequently charged with one count of possession of firearm prohibited.

*Commonwealth v. LaPoint*, No. 1638 MDA 2022, 2023 WL 6972397, at *1 (Pa.Super. filed Oct. 23, 2023) (unpublished mem.) (citation and footnotes omitted).

A jury found LaPoint guilty of possession of a firearm prohibited. He was sentenced to a term of six to 12 years' incarceration. LaPoint appealed the judgment of sentence, and this Court affirmed. ***See id.*** In October 2023, LaPoint filed the instant PCRA petition. The PCRA court appointed counsel, who subsequently filed a ***Turner/Finley***[1] letter and a motion to withdraw. The PCRA court issued notice of its intent to dismiss the PCRA petition pursuant to Pa.R.Crim.P. 907 ("Rule 907") and granted counsel leave to withdraw. LaPoint filed a *pro se* response to the Rule 907 notice. The court denied LaPoint's PCRA petition without a hearing on July 24, 2024. This appeal followed.

LaPoint raises the following issues:

I. PCRA Counsel deprived [LaPoint] of his state created right to effective assistance of counsel on his first PCRA where counsel failed to raise issues of merit and/or litigate the issues of merit that [LaPoint] had raised in *pro se* filings.

II. [LaPoint] was deprived of effective assistance of counsel and a fair trial where trial counsel not only failed to prevent the jury from hearing prejudicial prior bad acts evidence, and also failed to move for a mistrial or request a cautionary instruction once the jury did hear that evidence, but counsel actually consented to the evidence being played for the jury.

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

III.    [LaPoint] was denied effective assistance of counsel and of a fair trial where counsel committed multiple errors during *voir dire* resulting in a biased jury being impaneled.

IV.    [LaPoint] was denied effective assistance of counsel where trial counsel failed to prepare for trial and view the dashcam video that was used against [LaPoint].

V.    [LaPoint] was deprived of his constitutional right to effective assistance of trial and appellate counsel, and of his right to a fair trial, where [LaPoint's] wife was compelled to testify against him at trial in[]violation of state law and procedural due process.

VI.    [LaPoint] was deprived of his constitutional right to effective assistance of counsel and that of a fair trial where [LaPoint's] wife was forced to testify as to confidential communications between spouses.

VII.    [LaPoint] was deprived of effective assistance of counsel in regards [sic] to a plea deal offered before trial.

LaPoint's Br. at 2.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

LaPoint's issues raise claims of counsel's ineffectiveness. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the

petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

*Ineffectiveness of PCRA Counsel*:

LaPoint first argues that PCRA counsel was ineffective for failing to raise the issues he raised in his *pro se* PCRA petition and for filing a ***Turner/Finley*** letter. He maintains that he had a right to effective counsel on his first PCRA petition and PCRA counsel should have raised his issues in amended PCRA petition. LaPoint requests that we remand the case to the PCRA court with instructions to appoint new counsel and "whatever other relief this Court deems appropriate." LaPoint's Br. at 8.

Petitioners "have a general rule-based right to the assistance of counsel for their first PCRA Petition." ***Commonwealth v. Cherry***, 155 A.3d 1080, 1082 (Pa.Super. 2017); Pa.R.Crim.P. 904(C). Once counsel is appointed, counsel must either amend the petitioner's *pro se* petition or certify that the claims lack merit by complying with the mandates of ***Turner/Finley***. ***Cherry***, 155 A.3d at 1083. "The ***Turner/Finley*** decisions provide the manner for post-conviction counsel to withdraw from representation." ***Commonwealth v.***

*Rykard*, 55 A.3d 1177, 1184 (Pa.Super. 2012), *abrogated on other grounds by Commonwealth v. Bradley* 261 A.3d 381, 397 (Pa. 2021).

The holdings of the *Turner/Finley* line of cases "mandate an independent review of the record by competent counsel before a PCRA court or appellate court can authorize an attorney's withdrawal." *Id.* A *Turner/Finley* brief must detail the nature and extent of counsel's review, list each issue the petitioner wishes to have reviewed, and provide an explanation of why the petitioner's issues are meritless. *Commonwealth v. Widgins*, 29 A.3d 816, 818 (Pa.Super. 2011). If counsel satisfies the procedural requirements of *Turner/Finley*, the court must conduct its own review of the merits of the case. *Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007). If the court agrees with counsel that the claims are without merit, the court will allow counsel to withdraw and deny relief. *Id.* Finally, Pennsylvania law "forbids appointment of new counsel where a proper *Turner/Finley* no-merit letter has been accepted and counsel was permitted to withdraw." *Commonwealth v. Williams*, 204 A.3d 489, 493 (Pa.Super. 2019) (citation and footnote omitted). Instead, a petitioner must use their own resources to retain counsel or proceed *pro se*. *Id.*

Here, counsel filed a detailed and well-reasoned "no-merit" letter, and the PCRA court conducted its own independent review and determined that the petition was without merit. *See Turner/Finley* "No Merit" Letter, 1/18/24; Rule 907 Notice, 3/22/24, at 3; Order, 7/24/24, at 1 (unpaginated) n.1. We perceive no error in that determination. A review of LaPoint's *pro se*

PCRA petition and counsel's ***Turner/Finley*** letter shows that counsel addressed each issue LaPoint wished to have reviewed. Counsel thus complied with the dictates of ***Turner/Finley*** and counsel cannot be deemed ineffective for failing to raise meritless claims. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006). LaPoint's first claim is without merit.

*Ineffectiveness of Trial Counsel for Allowing Jury to Hear "Prior Bad Acts" Evidence*:

LaPoint argues that trial counsel was ineffective when he allowed the jury to hear prejudicial bad acts evidence, *i.e.*, that he used the medication Suboxone. At trial, the Commonwealth introduced bodycam footage of the arresting officer's conversation with LaPoint, in which LaPoint mentions that he used Suboxone. After the video was played, LaPoint's counsel requested a sidebar and the following exchange occurred:

> [LAPOINT'S COUNSEL]: In reference to the Suboxone, that might be prejudicial.
>
> THE COURT: How is that prejudicial? And how come you didn't raise this before it was played?
>
> [LAPOINT'S COUNSEL]: Well, I didn't think this was gonna be played.
>
> [THE COMMONWEALTH]: I just asked you whether it was okay to play the portions of it where they're talking.
>
> [LAPOINT'S COUNSEL]: But the Suboxone, I didn't think that was actually coming in.
>
> THE COURT: I don't see where the prejudice is. The jurors probably don't know what Suboxone means.
>
> [LAPOINT'S COUNSEL]: Okay.
>
> THE COURT: Is there something you are asking for?

[LAPOINT'S COUNSEL]: A curative instruction. I guess not.

THE COURT: I mean, --

[THE COMMONWEALTH]: I think you're gonna draw more attention.

THE COURT: -- the fact he's on medication? Is anybody suggesting he was on drugs this day?

[THE COMMONWEALTH]: No.

[LAPOINT'S COUNSEL]: No.

THE COURT: He said he hasn't taken it in years.

[LAPOINT'S COUNSEL]: I just didn't like the way I heard the testimony come out just now.

THE COURT: Your objection is denied. Let's move forward. If something else comes up we'll deal with it.

[LAPOINT'S COUNSEL]: All right. Thank you.

N.T. Trial, 8/22/22, at 132-33.

LaPoint asserts that even though his counsel consented to the video being played, counsel had not reviewed the video prior to trial, and therefore failed to adequately prepare for trial. In LaPoint's view, "[c]ounsel should have viewed this footage prior to trial and filed a pre-trial motion to have this video suppressed, or at the least, edited to exclude the mention of prior bad acts and bad character evidence." LaPoint's Br. at 10. He maintains that the mention of his use of Suboxone at trial was not relevant and highly prejudicial. *Id.* at 11. LaPoint further argues that counsel was ineffective for failing to request a mistrial or a cautionary instruction, and failing to preserve the issue for appeal. *Id.* at 12. He concludes that "counsel had no strategy where

- 7 -

counsel consents to, and then objects to, the evidence and fails to request any remedy to the violation." ***Id.***

The decision whether to seek a specific instruction "implicates a matter of trial strategy." ***Commonwealth v. Johnson***, 179 A.3d 1105, 1119 (Pa.Super. 2018). "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if [counsel] chose a particular course that had some reasonable basis designed to effectuate [the] client's interests." ***Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) (citation omitted). "[T]rial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do." ***Commonwealth v. Koehler***, 36 A.3d 121, 146 (Pa. 2012) (cleaned up); ***see also Johnson***, 179 A.3d at 1119 ("trial counsel may reasonably decline to request a limiting instruction . . . where such an instruction might have served to emphasize what might otherwise have gone relatively unnoticed by the jury") (citation omitted).

Here, counsel had a reasonable basis for failing to request a cautionary instruction, which, the transcript shows, was to prevent highlighting the issue for the jury. Further, LaPoint has failed to show that there was a reasonable probability the outcome of the proceedings would have been different had the use of Suboxone not been mentioned. The jury had been presented with significant evidence that LaPoint was guilty of possession of a firearm

prohibited. LaPoint therefore failed to establish prejudice. *See **Velazquez***, 216 A.3d at 1149.

*Ineffectiveness of Trial Counsel During Voir Dire*:

In his third issue, LaPoint argues that trial counsel was ineffective for failing to request during *voir dire* that certain jurors be disqualified because they were biased. LaPoint's Br. at 13. Specifically, Lapoint avers the following jurors were biased:

- Juror 137: had several friends who were undercover narcotics officers;
- Juror 150: related to law enforcement;
- Juror 153: was a victim of crime;
- Juror 182: related to law enforcement;
- Juror 183: friends and neighbors with a local chief of police;
- Juror 219: wife had been affected by crime.

***Id.*** at 15.

He also argues that Jurors 219 and 183 gave ambiguous answers about whether they could be impartial. ***Id.*** He points out that when Juror 219 was asked whether the fact that his wife was affected by a crime would affect his impartiality in this case, he replied, "No, I don't think so." ***Id.*** (citation omitted). LaPoint further notes that when Juror 183 was asked if he could be impartial, he answered, "Shou[l]d be, yeah." ***Id.*** (citation omitted). LaPoint concludes that "[w]ith this many questionable jurors during *voir dire*, there is

no reasonable strategy [by trial counsel] that would explain no challenges for cause, and [there was] no evidence that [peremptory] strikes were used." ***Id.***

"A defendant has a right to an impartial jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution." ***Commonwealth v. Chmiel***, 889 A.2d 501, 519 (Pa. 2005). The purpose of *voir dire* is to aid the empaneling of a "competent, fair, impartial, and unprejudiced jury[.]" ***Commonwealth v. Holt***, 273 A.3d 514, 546 (Pa. 2022) (citation omitted). Further,

> [t]he test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence. This decision rests within the sound discretion of the trial court, must be based upon the juror's answers and demeanor, and will not be reversed in the absence of a palpable abuse of this discretion.

***Commonwealth v. Robinson***, 864 A.2d 460, 489 (Pa. 2004) (cleaned up). Appellate courts defer to the trial court's assessment of a prospective juror's answers during *voir dire* because the trial court is "in the best position to assess the credibility and fitness to serve of the prospective juror[.]" ***Commonwealth v. Cox***, 983 A.2d 666, 683 (Pa. 2009).

Here, a review of the record indicates that Jurors 137, 150, 153, and 182 unequivocally stated that they could be fair and impartial. ***See*** N.T. at 32, 37-38, 42-43. As to Juror 183, the following inquiry took place during *voir dire*:

[DEFENSE COUNSEL]: Okay. And 183. Yes, sir.

[JUROR 183]: Chief of police.

[DEFENSE COUNSEL]: Okay. You know the chief of police?

[JUROR 183]: Yeah, he's my neighbor. Yeah.

[DEFENSE COUNSEL]: The most recent chief of police here in the City?

[JUROR 183]: No, in Columbia.

[DEFENSE COUNSEL]: Oh, in Columbia. Okay.

[JUROR 183]: Yeah.

[DEFENSE COUNSEL]: All right. So he's your neighbor?

[JUROR 183]: Uh-huh.

[DEFENSE COUNSEL]: And are you close?

[JUROR 183]: Yeah.

[DEFENSE COUNSEL]: Okay. Do you talk about criminal cases at all?

[JUROR 183]: No.

[DEFENSE COUNSEL]: Okay. Could you be fair and impartial in this matter--

[JUROR 183]: Yeah.

[DEFENSE COUNSEL]: -- involving a handgun or a shotgun?

[JUROR 183]: Should be, yeah.

*Id.* at 39-40.

As to Juror 219, the following exchange took place during *voir dire*:

[THE COMMONWEALTH]: Okay. 219.

[JUROR 219]: [A crime] affected my wife. I don't know if that matters.

[THE COMMONWEALTH]: Okay. Would that maybe affect your ability to be fair and impartial?

[JUROR 219]: No, I don't think so.

- 11 -

[THE COMMONWEALTH]: Okay. Thank you.

*Id.* at 33.

Jurors 183 and 219's responses were not ambiguous as to whether they could be fair and impartial. Rather, they affirmatively indicated that they would be able to render a fair and impartial verdict. Thus, trial counsel had an insufficient basis to object and seek disqualification of these jurors, and counsel cannot be deemed ineffective for failing to raise a meritless claim. *Spotz*, 896 A.2d at 1210. Further, even if trial counsel had made a motion to strike the jurors, LaPoint has failed to establish that there was a reasonable probability that the outcome of the trial would have been different.

*Ineffectiveness of Trial Counsel for Failure to Prepare for Trial and View the Dashcam Video*:

In his fourth issue, LaPoint argues that trial counsel was ineffective for failing to file a motion to suppress an inculpatory statement he made in the police car that was recorded on the dash cam and played for the jury. LaPoint's Br. at 19. He claims his statement that he "hid[] the gun in the shed" was obtained illegally by the police after he invoked his *Miranda* rights. *Id.* at 17, 19. LaPoint further maintains that trial counsel was ineffective for failing to object to the Commonwealth "fast forwarding [the dam cam video] and editing through the part where [he] was being given *Miranda* and involving his right to counsel." *Id.* at 19.

LaPoint failed to raise this issue in his PCRA petition. Accordingly, the issue is waived. ***See*** Pa.R.A.P. 302(a).[2]

*Ineffectiveness of Trial Counsel and Appellate Counsel for Failing to Object to Wife's Testifying Against LaPoint*:

In his fifth issue, LaPoint alleges that he was deprived of his constitutional right to effective assistance of counsel where his wife was compelled to testify against him at trial. Citing 42 Pa.C.S.A. § 5913, LaPoint argues that, except in limited circumstances not applicable here, a person in a criminal proceeding has a spousal privilege not to testify against his or her lawful spouse. LaPoint's Br. at 21. LaPoint asserts that his wife did not want to testify at his trial but was subpoenaed to testify by the prosecution. ***Id.*** at 22. LaPoint argues that counsel was ineffective for failing to object to his wife's testimony. ***Id.*** at 23. In LaPoint's view, "[c]ounsel was aware that [his wife] possessed the privilege under § 5913, and that only she could invoke that privilege" and "[i]t was clear failure for counsel to fail to object to her testimony based on spousal privilege and ask that she be colloquied on her knowledge of her privilege[.]" ***Id.***

Section 5913 provides:

_____

[2] Although LaPoint raised this issue in his *pro se* Rule 907 response, "the response is not itself a petition[,] and the law still requires leave of court to submit an amended petition." ***Commonwealth v. Miranda***, 317 A.3d 1070, 1076 (Pa.Super. 2024) (citation omitted). Thus, the PCRA court is under no obligation to address new issues raised in a Rule 907 response where the petitioner did not seek leave to amend his petition. ***See Commonwealth v. Rigg***, 84 A.3d 1080, 1085 (Pa.Super. 2014). Here, LaPoint did not seek leave to amend his petition to include this claim and thus waived the issue. ***See id.***

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:

(1) in proceedings for desertion and maintenance;

(2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;

(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

42 Pa.C.S.A. § 5913.

Here, a review of the record indicates that LaPoint's wife failed to invoke her spousal testimony privilege. **See** N.T. at 109-23. By testifying against LaPoint, she waived her privilege under Section 5913. LaPoint's trial counsel cannot be deemed ineffective for failing to raise a spousal privilege on LaPoint's wife's behalf as he did not represent her. Accordingly, this claim is without merit.

*Ineffective Assistance of Counsel Where LaPoint's Wife was Forced to Testify as to Confidential Communications Between Spouses*:

In his sixth issue, LaPoint argues that counsel was ineffective for allowing his wife to testify about communications between them, without objecting based on the confidential spousal communication privilege. **See** 42 Pa.C.S.A. § 5914; LaPoint's Br. at 25. He points out that his wife testified that

they got into an argument on the day of the incident because she believed LaPoint had taken money from their joint accounts. LaPoint's Br. at 25. In LaPoint's view, "[t]his was clearly private and confidential [communications] between husband and wife" and the testimony from his wife "inferred to the jury that [he] was a bad husband." *Id.* LaPoint concludes that counsel was ineffective for failing to assert his privilege against his wife's testifying to any confidential communications and for "not objecting to questions from the prosecution that led to [his wife] revealing information from confidential conversations between husband and wife." *Id.* at 26.

Section 5914 provides: "Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." 42 Pa.C.S.A. § 5914. "The privilege under 42 Pa.C.S.A. § 5914 prevents a spouse from testifying against the declarant-defendant spouse regarding any communications which were confidential when made and which were made during the marital relationship." *Commonwealth v. Davis*, 121 A.3d 551, 556 (Pa.Super. 2015) (*en banc*) (cleaned up). "[W]here the challenged spousal communication was divulged by the declarant-defendant to third parties, the statement does not qualify as a confidential communication." *Id.* (cleaned up).

Here, the PCRA court found LaPoint's issue without merit. It explained:

On the night of the incident, as shown in exhibit 6, [LaPoint] tells Officer Johnson his side of what happened that evening, including the contents of the argument between he and his wife. **See** exhibit 6. Moreover, the argument was held in the family home where the couple's two daughters were present. "Generally, the presence of third parties negates the confidential nature of the communication." **Commonwealth v. Small**, 980 A.2d 549, 562 (Pa. 2009). Because [LaPoint] offers no specific testimony he believes violated [S]ections 5913 and/or 5914 and because neither section was violated based on the record before this [c]ourt, either because any confidential communication was divulged to the police or said in front of third parties[, the c]ourt did not err in allowing [LaPoint's] wife to testify[.]

Rule 907 Notice at 20-21; **see also** N.T. at 131.

The record supports the PCRA court's findings and it did not err. LaPoint disclosed the details of the argument between himself and his wife to the police on the night of the incident. LaPoint therefore waived his spousal privilege as to this information. As a result, LaPoint's counsel would have had no basis for objecting to LaPoint's wife's testimony at trial and thus was not ineffective.

*Ineffective Assistance of Counsel as to Offer of Plea Deal*:

In his final issue, LaPoint argues that he rejected the Commonwealth's plea offer due to counsel's advice. LaPoint's Br. at 27. He maintains that counsel informed him that the only evidence that the Commonwealth had against him was the 911 call made by his daughter. **Id.** at 29. He claims counsel failed inform him about the other evidence against him. According to LaPoint, "[i]f [he] had known that the Commonwealth had video footage of

him stating where he hid a gun, and that his wife would testify for the Commonwealth, he absolutely would have accepted the plea offer[.]" ***Id.***

LaPoint failed to raise this issue in his PCRA petition. The issue is therefore waived and cannot afford LaPoint an avenue to PCRA relief. ***See*** Pa.R.A.P. 302(a).

Order affirmed.


Judgment Entered.


_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/24/2025